UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

XHAIL USA, INC. and XHAIL, INC.,

       Plaintiffs,

  vs.                               C.A. NO. 22-579-CFC

MICHAEL J. KIELY,

       Defendant.

**MICHAEL J. KIELY'S BRIEF IN SUPPORT OF HIS MOTION
TO SET ASIDE DEFAULT AND OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. iii

I.   STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS..........1

II.  SUMMARY OF ARGUMENT..........................................................1

III. STATEMENT OF RELEVANT FACTS ..........................................2

    A. Background And Procedural Issues............................................2

    B. The Purported Loans At Issue ..................................................6

IV.  ARGUMENT...............................................................................8

    A. Cases Should Be Decided On The Merits. .................................8

    B. Plaintiffs Will Suffer No Prejudice. ..........................................9

    C. Kiely Has Meritorious Defenses. ............................................10

    D. Kiely's Failure To Timely Respond Was Justified. ...................16

V. CONCLUSION ............................................................................17

<u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Affiliated Enterprises, Inc. v. Waller*,
5 A.2d 257 (Del. Super. Ct. 1939)............................................................12

*Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*,
794 A.2d 1141 (Del. 2002) .......................................................................15

*Cianci v. JEM Enterprise, Inc.*,
2000 WL 1234647 (Del. Ch., Aug. 22, 2000, No. CIV. A. 16419-NC)..............13

*Cont'l Ins. Co. v. Rutledge & Co.*,
750 A.2d 1219 (Del. Ch. 2000) .................................................................12

*DCV Holdings Inc. v. ConAgra, Inc.*,
889 A.2d 954 (Del. 2005) ..........................................................................11

*Dizzley v. Friends Rehabilitation Program, Inc.*,
202 F.R.D. 146 (E.D. Pa. 2001) ................................................................10

*Dougherty v. Mieczkowski*,
661 F. Supp. 267 (D. Del. 1987) ...............................................................11

*Feliciano v. Reliant Tooling Co.*,
691 F.2d 653 (3d Cir. 1982)......................................................................10

*First Mortgage Co. v. Federal Leasing Corp.*,
456 A.2d 794 (Del. 1982) .........................................................................12

*Fowler v. Mumford*,
102 A.2d 535 (Del. Super. 1954) ..............................................................13

*Girafa.com, Inc. v. Smartdevil Inc.*,
728 F. Supp. 2d 537 (D. Del. 2010) ......................................................9, 10

*Gross v. Stereo Component Sys., Inc.*,
700 F.2d 120 (3d Cir. 1983) ...................................................................16

*Handle v. Postmaster Gen., United States Postal Serv.*,
806 F. App'x 95 (3d Cir. 2020) .................................................................9

*In re Semcrude, L.P.*,
728 F.3d 314 (3d Cir. 2013) ......................................................................9

*J & G Associates v. Ritz Camera Ctrs., Inc.*,
1989 WL 115216 (Del. Ch. Oct.3, 1989) .......................................15, 16

*Kroblin Refrigerated Xpress, Inc. v. Pitterich*,
805 F.2d 96 (3d Cir. 1986) .......................................................................16

*Luster v. PuraCap Lab'ys, LLC*,
WL 7209537 (D. Del. Dec. 1, 2021) ...............................................11, 12

*Mike Rosen & Assocs., P.C. v. Omega Builders Ltd.*,
940 F. Supp. 115 (E.D. Pa. 1996)..............................................................9

*Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*,
175 F. App'x 519 (3d Cir. 2006)..............................................................16

*Reiver v. Murdoch & Walsh, P.A.*,
625 F. Supp. 998 (D. Del. 1985) ..............................................................13

*Stephenson v. Capano Dev. Inc.*,
462 A.2d 1069 (Del. 1983) .......................................................................11

*Tozer v. Charles A. Krause Mill. Co.*,
189 F.2d 242 (3d Cir. 1951).............................................................10, 17

*Tulowitzki v. Atl. Richfield Co.*,
396 A.2d 956 (Del. 1978) .........................................................................14

*Turner v. Corr. Med. Servs.*,
262 F.R.D. 405 (D. Del. 2009).................................................................10

*United States v. $55,518.05 in U.S. Currency*,
728 F.2d 192 (3d Cir. 1984).......................................................................9

*Way Rd. Dev. Co. v. Snavely*,
1992 WL 19969 (Del. Super. Ct. Jan. 31, 1992)....................................................14

*Williams v. Walker–Thomas Furniture Co.*,
350 F.2d 445 (D.C. Cir. 1965) ............................................................................14

*Zawadski de Bueno v. Bueno Castro*,
822 F.2d 416 (3d Cir. 1987)..................................................................................9

Statutes

Fed. R. Civ. P. 55.....................................................................................................8

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

On April 28, 2022, Plaintiffs Xhail USA, Inc. and Xhail, Inc. (collectively "Plaintiffs" and as a company referred to as "Xhail") filed their Complaint. (D.I. 1). On May 3, 2022, the Summons and Complaint were purportedly served on Defendant Michael J. Kiely ("Defendant" or "Kiely"). (*See* D.I. 6). On May 26, 2022, Plaintiffs filed a Request for Clerk's Entry of Default. (D.I. 7). On June 2, 2022, Plaintiffs filed a Motion for Default Judgment. (D.I. 8).

On August 31, 2022, the Court issued its Entry of Default. (D.I. 9). The Court has set a hearing on Plaintiffs' Motion for Default Judgment for October 18, 2022 (at 2:00 p.m.). (D.I. 10).

## II.   SUMMARY OF ARGUMENT

Kiely hereby sets for the following legal propositions upon which he relies:

1.   There is a strong presumption in favor of resolving cases on the merits.

2.   Good cause exists to set aside the default because Plaintiffs will not be prejudiced.

3.   Good cause exists to set aside the default because Kiely has meritorious defenses.

4.   Good cause exists to set aside the default because Kiely's failure to timely respond was not the result of Kiely's culpable conduct.

## III.   STATEMENT OF RELEVANT FACTS

### A. Background And Procedural Issues

Kiely founded Xhail, which helps ordinary consumers create professional quality music. [Declaration of Michael J. Kiely filed concurrently herewith ("Kiely Decl.") at ¶ 3]. Xhail has developed the world's most advanced automatic music generating platform. [*Id.*]. Xhail's patented technology combines stems into ready music cues and songs in a vast number of styles and genres. [*Id.*]. Xhail puts music creation in the hands of everyone, in real-time, while generating rights-cleared music performed by professional musicians. [*Id.*].

Xhail is comprised of multiple companies, including the Plaintiffs in this case, Xhail USA, Inc. and Xhail, Inc. (collectively as a company referred to as "Xhail"). [*Id.* at ¶ 4]. Until recently, Kiely was an employee, the Chairman of the Board of Directors of certain Xhail entities, including Xhail, Inc., and the founding director of Xhail USA, Inc. [*Id.* at ¶ 5].

In late 2021, certain individuals at Xhail concocted a scheme to oust Kiely from the company. [*Id.* at ¶ 6]. They were successful in that Kiely has been improperly removed as an employee and Chairman of the Board of Directors of Xhail. [*Id.*].

On the day of purported service of Summon and Complaint on Kiely (May 3, 2022), he was told that he could come to Xhail's Los Angeles office with another individual and that he could take his personal items from the office. [*Id.* at ¶ 8].

When he got to the office, he was not permitted to have anyone else with him. [*Id.*]. When he was inside the office, he was told that he could not take his personal items with him. [*Id.*]. Instead, an individual Kiely did not know approached him and identified himself simply as Paul. [*Id.*]. Paul attempted to hand Kiely an envelope and declared that Kiely had been served. [*Id.*]. Kiely then realized that the representations made to him about coming to the office to get his personal items had been a setup to ambush him with a process server at the office in front of his colleagues (even though Plaintiffs' executives, attorneys, and process server knew where Kiely lived). [*Id.*]. Because Kiely felt he had been deceived and because of what was transpiring with his improper ouster, he did not accept the envelope, open it, or take it with him when he left the office. [*Id.*]. Kiely has come to realize that Paul was also the individual that had been conducting surveillance on Kiely's wife and him at their home (including spying through windows), and Kiely believes it was Xhail who engaged Paul to conduct that surveillance. [*Id.*].

On May 16, 2022, Kiely moved out of his residence in Los Angeles and moved to Ireland. [*Id.* at ¶ 9]. Executives at Xhail were well aware of Kiely's move and that he was no longer in the United States, let alone California, as of May 16, 2022. [*Id.*]. As just one example, one Xhail executive had been involved in arranging Kiely's one-way flight from the United States to Ireland. [*Id.*].

During the same time, including via an email on May 16, 2022, Kiely contacted executives at Xhail and requested that any legal papers be sent to him via

3

email and confirmed that he was willing to accept service via email. [*Id.* at ¶ 10]. Kiely never received any legal papers via email in response to his communications. [*Id.* at ¶ 11]. Kiely never received Plaintiffs' Request for Clerk's Entry of Default, which was purportedly mailed to Kiely's former Los Angeles residence (where Xhail's executives knew Kiely no longer lived). [*Id.* at ¶ 12].

On May 30, 2022, Kiely's Swedish legal counsel contacted Plaintiffs' counsel via email, stated that Kiely had not received any of the filings in this case, and asked that Plaintiffs' counsel provide copies of what had been purportedly served on Kiely. [*Id.* at ¶ 13]. Kiely did not know the case location or case number because he left the documents at the location when they were handed to him, as mentioned above. [*Id.*]. Kiely's Swedish attorney did not receive a response to that email. [*Id.*].

After Kiely moved to Ireland in May, executives at Xhail set up an in-person meeting with him to discuss potential resolution of issues between the company and him. [*Id.* at ¶ 14]. An executive at Xhail even flew from the United States to meet Kiely in Ireland and provided Kiely with a cash payment to attend the meeting. [*Id.*]. As part of the meeting and the discussions surrounding it, executives at Xhail told Kiely not to worry about this case because they were confident that the parties could resolve their issues, and this case would "go away." [*Id.*]. The executives at Xhail never told Kiely that Plaintiffs were intending to file the request for a default or default judgment to be entered against him. [*Id.*]. Subsequent to that meeting, executives at Xhail and Kiely engaged in numerous settlement negotiations. [*Id.*].

After receiving Plaintiffs' Motion for Default Judgment (D.I. 8) from his Swedish attorney, Kiely immediately contacted an executive at Xhail and stated that the motion was not helpful for the ongoing negotiations and that Kiely felt the filing of the document indicated that the company is either trying to further intimidate him or that the company has decided to proceed with litigation instead of settlement negotiations. [*Id.* at ¶ 15]. That executive responded by asking if Kiely could "pause a bit further" while executives at Xhail discussed how to proceed with the settlement negotiations.

Thereafter, in June, July, and August of 2022, executives at Xhail and Kiely engaged in numerous settlement negotiations. [*Id.* at ¶ 16]. Among other things, during these negotiations Kiely was repeatedly assured by executives at Xhail that this case would "go away." [*Id.*]. Those negotiations also included a draft of agreements that were circulated. [*Id.*]. However, the draft of the agreements included terms that Kiely could not accept. [*Id.*]. Accordingly, Kiely has been unable to resolve his issues with Xhail. [*Id.*].

Since the settlement negotiations ceased in August, Kiely has been attempting to engage counsel in the United States, including in Delaware, to assist him with defending this case. [*Id.* at ¶ 17]. That process has been complicated by the fact that Kiely resides in Ireland and has limited means, especially since he has been improperly removed from his employment. [*Id.*].

Further, since May, Kiely has been dealing with personal family issues that have prevented him from focusing on this case. [*Id.* at ¶ 18]. For example, shortly after moving to Ireland, Kiely's wife fell seriously ill, including having stay at a hospital. [*Id.*]. Also, Kiely has had to expend significant time and effort in moving his family from Los Angeles to Ireland. [*Id.*].

### B. The Purported Loans At Issue

Plaintiffs generally allege that Kiely breached two loan agreements by failing to fully pay them. (*See* D.I. 1).

However, the purported loan agreements at issue in this case were truly an accounting mechanism for Xhail to pay for Kiely's housing and furnishings in Los Angeles while he worked at the Los Angeles office of Xhail. [Kiely Decl. at ¶ 21]. More specifically, as part of his employment with Xhail, Xhail agreed to pay for Kiely's housing and furnishings in Los Angeles while he worked at the Los Angeles office of Xhail in addition to his salary. [*Id.* at ¶ 22]. Prior to June 2021, Xhail had directly paid for a relatively small apartment for Kiely's family and him. [*Id.*].

In early June 2021, Xhail agreed to provide Kiely with larger housing and furnishings for the new housing. [*Id.* at ¶ 23]. Instead of Xhail paying for the new housing directly, Xhail decided to restructure how the housing was paid for. [*Id.*]. An executive told Kiely that Xhail would "loan" him the money for the housing and furnishings, that Kiely's salary would be changed to correspond with the "loan" for the lease, and that Xhail would advance Kiely $60,000 to furnish the new housing

to be paid in one lump sum once the company had sold certain shares after the next funding round that was to close in the summer of 2021, but that round ran late and did not close until after Kiely was ousted. [*Id.* at ¶¶ 23-24].

As part of the housing arrangement, Kiely signed the documents attached as Exhibits A and B to the Complaint in this case. (D.I. 1-1 and D.I. 1-2). [*Id.* at ¶ 25]. Exhibit A is related to the monthly rent payments pursuant to the lease Kiely signed in June 2021, i.e., $210,000 for twelve (12) monthly rent payments of $17,500 each. [*Id.*]. Exhibit B is related to the furnishings for the house. [*Id.*].

Kiely was repeatedly told by executives at Xhail, before and after signing Exhibits A and B, that the purported loans would never be enforced in the traditional sense. [*Id.* at ¶ 26]. For example, when the purported loan referenced in Exhibit B purportedly came due for payment, September 16, 2021 (and for months thereafter), Xhail never demanded payment. [*Id.*]. Rather, in September 2021, an executive at Xhail confirmed that the purported loan did not need to be repaid. [*Id.*]. That is because the arrangement was always that the money for housing and furnishings for Kiely was part of his pre-existing compensation package as an employee of Xhail, that the money for the furnishings was to be repaid through outside company funding, and that the purported loans were merely an accounting mechanism for the benefit of the company. [*Id.*]. Had Kiely known that Xhail intended to treat Exhibits A and B as real loans, he would not have signed the documents. [*Id.*].

Additionally, when the arrangement was made, and documents signed for the purported loans, Kiely did not know that individuals at Xhail intended to oust him from the company. [*Id.* at ¶ 27]. Had he known that Xhail intended to oust him from the company, he would not have signed the documents. [*Id.*]. It would have made no sense for Kiely to commit to a 12-month lease in Los Angeles unless he was working for Xhail in the Los Angeles office. [*Id.*].

Further, at the in-person meeting with an Xhail executive in Ireland referenced above, the executive at Xhail acknowledged the real arrangement and that the characterization of Exhibits A and B as true loans, as stated in this case, is a misrepresentation. [*Id.* at ¶ 28].

Kiely has also learned that an Xhail shareholder offered to pay Xhail to cover the purported loan referenced in Exhibit B to the Complaint, but Xhail has ignored that offer. [*Id.* at ¶ 29].

Overall, it appears that Xhail is using this case, including representing that Exhibits A and B as true loans when Xhail knows that not to be true, to pressure Kiely into settling issues stemming from his improper ouster (among other things). [*Id.* at ¶ 30].

## IV.   ARGUMENT

### A. Cases Should Be Decided On The Merits.

Pursuant to Federal Rule of Civil Procedure 55(c), a "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c).

"District courts have discretion in evaluating whether good cause exists to set aside an entry of default." *Handle v. Postmaster Gen., United States Postal Serv.*, 806 F. App'x 95, 100 (3d Cir. 2020). In exercising that discretion, there is a strong presumption in favor of resolving cases on the merits. *See In re Semcrude, L.P.*, 728 F.3d 314, 326 (3d Cir. 2013); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984) ("[T]his court does not favor entry of defaults or default judgments."). Even in close cases, "doubts should be resolved in favor of setting aside the default and reaching the merits." *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 420 (3d Cir. 1987).

The Third Circuit has stated that it requires "the district court to consider the following factors in exercising its discretion in granting or denying a motion to set aside a default under Rule 55(c) or a default judgment under Rule 60(b)(1): (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d at 195.

B. <u>Plaintiffs Will Suffer No Prejudice.</u>

Prejudice to a plaintiff typically involves a "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the entry of default." *Girafa.com, Inc. v. Smartdevil Inc.*, 728 F. Supp. 2d 537, 545 (D. Del. 2010) (quoting *Mike Rosen & Assocs., P.C. v. Omega Builders Ltd.*, 940 F. Supp. 115, 117-118 (E.D. Pa. 1996)). A delay in realizing a judgment "rarely serves to

establish the degree of prejudice sufficient to prevent the opening of a default judgment entered at an early stage of the proceeding." *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656-657 (3d Cir. 1982).

Here, Plaintiffs will not be able to provide any basis for prejudice should the Court set aside the default. The case was only filed in April, less than six months ago. Further, the purported agreements at issue were only entered into a little over a year ago. Accordingly, none of the issues that would qualify as prejudice are present here.

### C.    Kiely Has Meritorious Defenses.

The showing of a meritorious defense is accomplished when "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *Tozer v. Charles A. Krause Mill. Co.*, 189 F.2d 242, 244 (3d Cir. 1951). However, "a litigable defense does not need to be established beyond doubt in defendant's pleading." *Turner v. Corr. Med. Servs.*, 262 F.R.D. 405, 408 n.8 (D. Del. 2009); *see also Girafa.com, Inc.*, 728 F. Supp. 2d at 545 (it is not required that "the defaulting party ... prove beyond a shadow of a doubt that [it] will win at trial, but merely ... show that [it has] a defense to the action which at least has merit on its face.") (quoting *Dizzley v. Friends Rehabilitation Program, Inc.*, 202 F.R.D. 146, 148 (E.D. Pa. 2001)).

Here, Kiely has meritorious defenses to the claims in this case, and, should the Court grant Kiely's motion and vacate the default, Kiely intends to file an Answer to the Complaint.

First, Kiely intends to put forth a valid defense that he was fraudulently induced into the purported loan agreements by Plaintiffs.

"If the fraud relates to the inducement to enter the contract, then the agreement is 'voidable' at the option of the innocent party." *Dougherty v. Mieczkowski*, 661 F. Supp. 267, 274 (D. Del. 1987). "Fraudulent inducement is an affirmative defense to contract enforcement…." *Luster v. PuraCap Lab'ys, LLC*, No. CV 18-503-MN-JLH, 2021 WL 7209537, at *5 (D. Del. Dec. 1, 2021).

The elements for fraud in the inducement are: (1) a false representation of material fact; (2) the defendant's knowledge of or belief as to the falsity of the representation or the defendant's reckless indifference to the truth of the representation; (3) the defendant's intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance. *See Stephenson v. Capano Dev. Inc.*, 462 A.2d 1069, 1073 (Del. 1983); *see also DCV Holdings Inc. v. ConAgra, Inc.*, 889 A.2d 954 (Del. 2005).

Here, as detailed above and the accompanying Declaration, to induce Kiely to sign the documents, Plaintiffs represented that the documents they are now trying to enforce as loans were actually just an accounting mechanism for Xhail to pay for

11

Kiely's housing and furnishings in Los Angeles while he worked at the Los Angeles office of Xhail. It now appears that Plaintiffs intended to enforce the purported loan agreements as true loans even though they told Kiely otherwise. Plaintiffs obviously knew that they were misrepresenting the nature of the purported loan agreements, and Kiely justifiably relied on Plaintiffs' misrepresentation.

Second, Kiely intends to put forth a valid defense that the purported loan agreements fail for lack of consideration.

It is a fundamental tenet of contract law that a valid contract requires good or valuable consideration. *Affiliated Enterprises, Inc. v. Waller*, 5 A.2d 257, 259 (Del. Super. Ct. 1939). Delaware courts define consideration, in general, as that which is given to induce a promise or performance in return. *Id.* at 259. Consideration can consist of either a benefit to the promisor or a detriment to the promisee. *First Mortgage Co. v. Federal Leasing Corp.*, 456 A.2d 794, 795-796 (Del. 1982).

"The mere promise to perform a pre-existing legal duty is not valid consideration." *Luster v. PuraCap Lab'ys*, LLC, No. CV 18-503-MN-JLH, 2021 WL 7209537, at *6 (D. Del. Dec. 1, 2021); *see also Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1232 (Del. Ch. 2000) ("A party cannot rely on a pre-existing duty as his legal detriment in an attempt to formulate a contract.").

Here, Kiely intends to put forth a valid defense that the loan agreements lack consideration because they relate to a situation in which the parties were already bound – Kiely's pre-existing employment and compensation. As detailed above, the

12

purported loan agreements only came into existence because Xhail wanted to change the mechanism by which it was already paying for Kiely's housing to benefit the company. That change in mechanism did not result in any new benefit to Kiely for signing the purported loan agreements.

Third, Kiely has a meritorious defense based on coercion/duress.

Under Delaware law, there are three basic elements of a claim that coercion or duress taints the enforceability of a contract: (1) a "wrongful" act, (2) which overcomes the will of the aggrieved party, (3) who has no adequate legal remedy to protect himself. *Cianci v. JEM Enterprise, Inc.*, 2000 WL 1234647, at *9 (Del. Ch., Aug. 22, 2000, No. CIV. A. 16419-NC). Delaware has broadened the "wrongful act" element to include a wider range of wrongful acts, including economic duress. *See, e.g., Fowler v. Mumford*, 102 A.2d 535 (Del. Super. 1954) (recognizing "economic duress" as a basis to find coercion in the procurement of a contract); *see also Reiver v. Murdoch & Walsh, P.A.*, 625 F. Supp. 998, 1012-1013 (D. Del. 1985) (predicting that a Delaware court would recognize validity of claim or defense based on economic duress).

Here, Plaintiffs used their superior position as Kiely's employer and sole source income to get Kiely to sign the purported loan agreements. The alternative was clear – acquiesce or be out of a job (and home). Kiely did what any reasonable person would have and signed the purported loan agreements. *See, e.g., Reiver v. Murdoch & Walsh, P.A.*, 625 F. Supp. at 1014 (employee, who claimed that she had

been pressured to relinquish bonus that she was owed by employer by refusal of some directors to speak to her and by threat of termination if she insisted on receiving bonus, stated prima facie case of duress in surrendering part of her bonus); *see also Way Rd. Dev. Co. v. Snavely*, No. C.A. 89C-DE-48, 1992 WL 19969, at *4 (Del. Super. Ct. Jan. 31, 1992) (holding threats of initiating litigation and related activity sufficient to establish wrongful act for duress).

Fourth, similarly, Kiely has a meritorious defense that the purported loan agreements are unconscionable.

To determine whether a contract is unconscionable, "there must be an absence of meaningful choice and contract terms unreasonably favorable to one of the parties." *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978). "[A] contract is unconscionable if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other.' " *Id.* (quoting *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 450 fn. 12 (D.C. Cir. 1965)).

Here, as they are trying to be enforced by Plaintiffs, the purported loan agreements are unconscionable. Again, Kiely had no meaningful choice but to sign the documents. Further, the entire arrangement was premised on Kiely working for Xhail. It would be unconscionable to enforce the documents as true loans when Plaintiffs improperly terminated Kiely.

Fifth, Kiely intends to put forth a valid defense that the purported loan agreements should be reformed to reflect their true nature.

Courts have equity power to grant reformation of a contract "to express the 'real agreement' of the parties involved." *See, e.g., Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151 (Del. 2002). Typically, the doctrines of mutual mistake and unilateral mistake justify reformation – for mutual mistake, "the plaintiff must show that both parties were mistaken as to a material portion of the written agreement," and for unilateral mistake the party "must show that it was mistaken and that the other party knew of the mistake but remained silent." *Id.*

Here, again, the true nature of the purported loan agreements was different from what Plaintiffs are trying to enforce. Instead of true loans, they were merely an accounting mechanism to benefit the company. The Court should recognize their true nature.

Lastly, Kiely intends to put forth valid defenses based on the change in circumstances after his improper ouster.

The defense of impracticability requires the defendant to establish three elements: (1) the occurrence of an event, the nonoccurrence of which was a basic assumption of the contract; (2) the continued performance is not commercially practicable; and (3) the party claiming impracticability did not expressly or impliedly agree to performance in spite of impracticability that would otherwise justify nonperformance. *J & G Associates v. Ritz Camera Ctrs., Inc.*, 1989 WL

115216, *4 (Del. Ch. Oct.3, 1989). The frustration of purpose defense requires the defendant to establish: (1) substantial frustration of the principal purpose of the contract; (2) that the nonoccurrence or occurrence of the frustrating event was a basic assumption upon which the contract was made; and (3) no fault on the part of the defendant. *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 102 (3d Cir. 1986).

Here, again, the purported loan agreements were premised on Kiely working for Xhail. That is how the "loans" were to be paid back – an accounting offset in Kiely's paycheck. Now that Plaintiffs' improperly terminated Kiely, it defeats the whole purpose of the "loans" and is impractical to require Kiely to repay them.

Overall, Kiely has numerous meritorious defenses in this case.

D.     Kiely's Failure To Timely Respond Was Justified.

"In this context, culpable conduct means actions taken willfully or in bad faith." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-124 (3d Cir. 1983). To show culpable conduct, "more than mere negligence must be demonstrated." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (cleaned up).

Here, Kiely's failure to timely respond to the Complaint was not willful or in bad faith. Rather, relied on Plaintiffs' representations that this case will "go away" and their request for Kiely to "pause a bit further" while the parties attempted to resolve their differences.

Further, Kiely's failure to timely respond to the Complaint was the result of his move out of the United States and dealing with personal family issues that have prevented him from focusing on this case.

Additionally, the circumstances of the service of the Summons and Complaint on Kiely resulted in him not actually receiving the documents, and copies were not provided to him despite repeated requests. Further, Kiely never received Plaintiffs' Request for Clerk's Entry of Default. *See, e.g., Tozer v. Charles A. Krause Milling Co.*, *supra*, 189 F.2d at 246 (holding no gross neglect where the defendant, a Wisconsin corporation, did not receive notice of the suit because it had failed to update the address of its Pennsylvania registered office).

Lastly, Kiely has been diligent in retaining counsel and filing his motion to vacate the default after the parties' settlements negotiations ended.

## V.    CONCLUSION

Based on the foregoing, Kiely respectfully request that the Court grant his motion, set aside the default, and allow Kiely to file a responsive pleading.


[Signature Page to Follow]

PINCKNEY, WEIDINGER,
URBAN & JOYCE LLC

Dated: October 13, 2022          By:    /s/ *Helena C. Rychlicki*
_____

Helena C. Rychlicki ( DE No. 3996)
2 Mill Road, Suite 204
Jason D. Annigian                    Wilmington, Delaware 19806
(*pro hac vice* to be filed)          Main: (302) 504-1497
ANNIGIAN RYAN LLP             Fax: (302) 442-7046
114 N. Indian Hill Blvd.,          Email: hrychlicki@pwujlaw.com
Suite E
Claremont, CA 91711              Attorneys for Defendant,
Tel:   (909) 981-0475              Michael J. Kiely
Fax:   (909) 981-0113
Email: jason@arllp.com