UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| XHAIL USA, INC. and XHAIL, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> MICHAEL J. KIELY, <br><br> Defendant. | C.A. NO. 22-579-CFC |

**DECLARATION OF MICHAEL J. KIELY**

**IN SUPPORT OF DEFENDANT'S MOTION TO SET ASIDE DEFAULT**

**AND OPPOSITION TO PLAINTIFFS' MOTION FOR DEFAULT**

**JUDGMENT**

I, Michael J. Kiely, hereby certify pursuant to 28 U.S.C. § 1746 that the statements set forth below are true and correct to the best of my knowledge, information, and belief:

1. I am the Defendant in the above-referenced case. I have personal knowledge of the matters set forth herein and, if called upon to testify to the facts in this declaration, I could and would testify competently thereto. This declaration is

made in support of the motion to set aside the default entered on August 31, 2022 (D.I. 9) and in opposition to Plaintiffs' Motion for Default Judgment (D.I. 8).

2. I currently reside in Ireland and have since May of this year.

3. I founded Xhail, which helps ordinary consumers create professional quality music. Xhail has developed the world's most advanced automatic music generating platform. Xhail's patented technology combines stems into ready music cues and songs in a vast number of styles and genres. Xhail puts music creation in the hands of everyone, in real-time, while generating rights-cleared music performed by professional musicians.

4. Xhail is comprised of multiple companies, including the Plaintiffs in this case, Xhail USA, Inc. and Xhail, Inc. (collectively as a company referred to as "Xhail").

5. Until recently, I was an employee, the Chairman of the Board of Directors of certain Xhail entities, including Xhail, Inc., and a founding director of Xhail USA, Inc.

6. In late 2021, certain individuals at Xhail concocted a scheme to oust me from the company. They were successful in that I have been improperly removed as an employee and Chairman of the Board.

7. I have seen the Proof of Service filed by Plaintiffs in this case (D.I. 6) stating that I was served with the Summon and Complaint on May 3, 2022 at 8921 Sunset Boulevard, West Hollywood, California 90069. That address is the Los Angeles office of Xhail.

8. On the day of purported service (May 3, 2022), I was at Xhail's Los Angeles office because was told that I could come to the office with another individual and that I could take my personal items from the office. When I got to the office, I was not permitted to have anyone else with me. When I was inside the office, I was told that I could not take my personal items with me. Instead, an individual I did not know approached me and identified himself simply as Paul. Paul attempted to hand me an envelope and declared that I had been served. I then realized that the representations made to me about me coming to the office to get my personal items had been a setup to ambush me with a process server at the office in front of my colleagues (even though Plaintiffs' executives, attorneys, and process server knew where I lived). Because I felt I had been deceived and because of what was transpiring with my improper ouster, I did not accept the envelope, open it, or take it with me when I left the office. I have come to learn that Paul was also the individual that had been conducting surveillance on my wife and me at our Los Angeles home (including spying through our windows), and I believe it was Xhail who engaged Paul to conduct that surveillance.

9. On May 16, 2022, I moved out of my residence in Los Angeles and moved to Ireland. Executives at Xhail were well aware of my move and that I was no longer in the United States, let alone California, as of May 16, 2022. As just one example, one Xhail executive had been involved in arranging my one-way flight from the United States to Ireland.

10. During the same time, including via an email on May 16, 2022, I contacted executives at Xhail and requested that any legal papers be sent to me via email and confirmed that I was willing to accept service via email.

11. I never received any legal papers via email in response to my communications.

12. I have seen the declaration of Plaintiffs' counsel (D.I. 8-1) stating that Plaintiffs' Request for Clerk's Entry of Default were mailed to my former Los Angeles residence. I never received those documents and was never told there was mail at my former Los Angeles residence.

13. On May 30, 2022, my Swedish attorney contacted Plaintiffs' counsel via email, stated that I had not received any of the filings in this case (and in fact I had no idea where this case was located, nor did I have any case number or other information to enable me to ascertain the existence of this case), and asked that Plaintiffs' counsel provide copies of what had been purportedly served on me. I did not know the case location or case number because I left the documents at the

location when they were handed to me, as mentioned above. My Swedish attorney did not receive a response to that email.

14. After I moved to Ireland in May of 2022, executives at Xhail set up an in-person meeting with me to discuss potential resolution of issues between the company and me. An executive at Xhail even flew from the United States to meet me in Ireland and provided me with a cash payment to attend the meeting. As part of the meeting and the discussions surrounding it, executives at Xhail told me not to worry about this case because they were confident that we could resolve our issues, and this case would "go away." The executives at Xhail never told me that Plaintiffs were intending to file the request for a default or default judgment to be entered against me. Subsequent to that meeting, executives at Xhail and I engaged in numerous settlement negotiations.

15. On June 3, 2022, my attorney in Sweden received Plaintiffs' Motion for Default Judgment (D.I. 8), which was then forwarded to me. I immediately contacted an executive at Xhail and stated that the motion was not helpful for the ongoing negotiations and that I felt the filing of the document indicated that the company is either trying to further intimidate me or that the company has decided to proceed with litigation instead of our settlement negotiations. That executive responded by asking if I could "pause a bit further" while executives at Xhail discussed how to proceed with the settlement negotiations.

16. Thereafter, in June, July, and August of 2022, executives at Xhail and I engaged in numerous settlement negotiations. Among other things, during these negotiations I was repeatedly assured by executives at Xhail that this case would "go away." Those negotiations also included a draft of agreements that were circulated. However, the draft of the agreements included terms that I could not accept. Accordingly, I have been unable to resolve my issues with Xhail.

17. Since the settlement negotiations ceased in August, I have been attempting to engage counsel in the United States, including in Delaware, to assist me with defending this case. That process has been complicated by the fact that I reside in Ireland and have limited means, especially since I have been improperly terminated from my employment.

18. Further, since May, I have been dealing with personal family issues that have prevented me from focusing on this case. For example, shortly after moving to Ireland, my wife fell seriously ill, including having stay at a hospital. Also, I have had to expend significant time and effort in moving my family from Los Angeles to Ireland.

19. I respectfully request that the Court set aside the default entered against me and allow me to defend the case on the merits.

20. I believe that I have meritorious defenses to the claims in this case. Should the Court grant my motion and vacate the default, I intend to file an Answer to the Complaint.

21. For example, the purported loan agreements at issue in this case were truly an accounting mechanism for Xhail to pay for my housing and furnishings in Los Angeles while I worked at the Los Angeles office of Xhail.

22. More specifically, as part of my employment with Xhail, and in addition to my salary, Xhail agreed to pay for my housing and furnishings in Los Angeles while I worked at the Los Angeles office of Xhail. Prior to June 2021, Xhail had directly paid for a relatively small apartment for my family and me.

23. In early June 2021, Xhail agreed to provide me with larger housing and furnishings for the new housing. An executive at Xhail negotiated the lease of a house for my family and me, and the lease was initially drafted with Xhail as the tenant. As with the prior apartment, Xhail was going to directly pay for lease on the house. The executive at Xhail who negotiated the lease of the house then changed his mind. The executive told me that the lease would be changed to be in my name because of concerns regarding potential liability for the company should something happen at the property with Xhail was as the "tenant" on the lease. In connection with changing the lease, the executive told me that Xhail would have to restructure how the housing was paid for. Instead of Xhail paying for the housing directly, the executive told me that Xhail would "loan" me the money for the housing and furnishings and that my salary would be changed to correspond with the "loan" for the lease. Executives at Xhail repeatedly told me that nothing would change from my prior housing arrangement, only how it was accounted for. For example, an

executive at Xhail stated that, pursuant to the "loan" agreement, there would be changes in my paycheck in the categories that make up gross wages and deductions, but "[t]he net amount will not change significantly."

24. Additionally, Xhail agreed to advance me $60,000 to furnish the new housing. It was agreed that this would be paid in one lump sum once the company had sold certain shares after the next funding round that was to close in the summer of 2021, but that round ran late and did not close until after I was ousted.

25. As part of the arrangement, I signed the documents attached as Exhibits A and B to the Complaint in this case. (D.I. 1-1 and D.I. 1-2). Exhibit A is related to the monthly rent payments pursuant to the lease I signed in June 2021, i.e., $210,000 for twelve (12) monthly rent payments of $17,500 each. Exhibit B is related to the furnishings for the house.

26. I was repeatedly told by executives at Xhail, before and after signing Exhibits A and B, that the purported loans would never be enforced in the traditional sense. For example, when the purported loan referenced in Exhibit B purportedly came due for payment, September 16, 2021 (and for months thereafter), Xhail never demanded payment. Rather, in September 2021, an executive at Xhail confirmed that the purported loan did not need to be repaid. That is because the arrangement was always that the money for housing for my family and me was part of my pre-existing compensation package as an employee of Xhail, that the money for the furnishings was to be repaid once the

company had sold certain shares after the next funding round (which did not happen before I was ousted), and that the purported loans were merely an accounting mechanism for the benefit of the company. Had I known that Xhail intended to treat Exhibits A and B as real loans, I would not have signed the documents.

27. Additionally, when the residence arrangement was made, and documents signed for the purported loans, I did not know that individuals at Xhail intended to oust me from the company. Had I known that Xhail intended to oust me from the company, I would not have signed the documents. It would have made no sense for me to commit to a 12-month lease in Los Angeles unless I was working for Xhail in the Los Angeles office. I believe I was duped into the arrangement.

28. Further, at my in-person meeting with an Xhail executive in Ireland referenced above, the executive at Xhail acknowledged the real arrangement and that the characterization of Exhibits A and B as true loans, as stated in this case, is a misrepresentation.

29. I have also learned that an Xhail shareholder offered to pay Xhail to cover the purported loan referenced in Exhibit B to the Complaint. (D.I. 1-2). However, Xhail has ignored that offer.

30. It is my belief that Xhail is using this case, including representing that Exhibits A and B as true loans when Xhail knows that not to be true, to pressure me into settling issues stemming from my improper ouster (among other things).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 10, 2022.

_____
Michael J. Kiely