1                  IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF DELAWARE

3     XHAIL USA, INC. and XHAIL )
      INC.,                      )
4                               )
              Plaintiffs,       )
5                               )   C.A. No. 22-579-CFC
        v.                      )
6                               )
      MICHAEL KIELY,            )
7                               )
              Defendant.        )
8                               )

9

10

11                    Tuesday, October 18, 2022
                             2:00 p.m.
12                       Motion Hearing

13

14                      844 King Street
                     Wilmington, Delaware
15

16    BEFORE: THE HONORABLE COLM F. CONNOLLY
      United States District Court Judge
17

18

19    APPEARANCES:

20

21            SHAW KELLER
              BY:  EMILY S. DIBENEDETTO, ESQ.

22

23            PINCKNEY, WEIDINGER, URBAN & JOYCE LLC
              BY:  HELENA C. RYCHLICKI, ESQ.
24                      Counsel for the Defendant

25

```
 1                  P R O C E E D I N G S

 2

 3        (Proceedings commenced in the courtroom beginning at

 4    2:00 p.m.)

 5                  THE COURT:  Good afternoon.

 6                  All right.  Is it Ms. DiBenedetto?  You're the

 7    plaintiff, right?

 8                  MS. DiBENEDETTO:  Yes, Your Honor.

 9                  THE COURT:  All right.  Good afternoon.

10                  MS. DiBENEDETTO:  Good afternoon.

11                  THE COURT:  And Ms. Rychlicki?

12                  MS. RYCHLICKI:  Rychlicki, Your Honor.

13                  THE COURT:  Rychlicki.

14                  MS. RYCHLICKI:  Yes, Your Honor.

15                  THE COURT:  Although, I've seen you before.

16                  MS. RYCHLICKI:  Yes, you have, Your Honor.

17                  THE COURT:  Not in this case, though.

18                  MS. RYCHLICKI:  Not in this case.  I just

19    joined.

20                  THE COURT:  Oh, that's right.  That's the

21    problem, I guess, right?

22                  MS. RYCHLICKI:  That's the problem, yes.

23                  THE COURT:  All right.  So let's be practical.

24    Well, tell me, you want to move forward with the default

25    judgment?
```

1          **MS. DiBENEDETTO:**  Yes, Your Honor, we do.

2          **THE COURT:**  All right.

3          **MS. DiBENEDETTO:**  And did -- I'm prepared to

4     discuss the contents of your order, the process of

5     service, and lack of response, and damages today, unless

6     Your Honor has any other questions that you'd like to

7     address first.

8          **THE COURT:**  Well, what about just the general

9     Third Circuit policy of favoring disposition of cases on

10    the merits, and not a technical ruling?

11          And am I not just inviting a reversal here,

12    we'll be back to square one, everybody will have spent

13    more much money than needed?

14          **MS. DiBENEDETTO:**  That's true, Your Honor.  In

15    the Third Circuit, there is a propensity to disfavor

16    default judgments.  However, the factors for default

17    judgment here are in favor of granting default.  The

18    plaintiffs will be prejudiced if default is not issued

19    here.

20          **THE COURT:**  You know, let me just ask you:  Is

21    the plaintiff never not prejudiced by setting aside a

22    default, or a default judgment, right?

23          Can you think of any case where there's not

24    prejudice?

25          **MS. DiBENEDETTO:**  It's hard to design a case

1    off the top of my heard, Your Honor.  But I imagine that

2    in many cases, that that is probably true.

3           But we have to consider the other factors as

4    well, including the lack of merits on the defendant's

5    side, and the culpability of the defendant for not

6    appearing until now.

7           **THE COURT:**  You think it was bad faith?

8           **MS. DiBENEDETTO:**  Your Honor, there has been a

9    pattern in this case of the defendant being served with a

10   complaint by hand, getting a courtesy -- or being sent a

11   courtesy copy of the complaint, receiving the motion for a

12   default judgment, and continuing throughout this

13   litigation to not appear.

14          Beyond this, even before the lawsuit was filed,

15   there are two loan agreements at play here.  And the

16   second loan agreement for $60,000 was -- came due while

17   Mr. Kiely was still an employee.  And he failed to pay

18   that, was later terminated, and then ceased paying

19   entirely on the first loan.

20          So this delinquency to abide by these loan

21   agreements has extended even before this litigation for

22   several months.

23          So there is a pattern here.

24          **THE COURT:**  What would you think if -- let's

25   say he was willing to pay for all the costs you incurred

1    in trying to get us to where we are today, and then at

2    that point, I'd say, well, if he's willing to do that,

3    then I won't -- then I'll set aside the default and we

4    will move forward; would that not be the fairest way to go

5    about this?

6        **MS. DiBENEDETTO:**  Are you proposing that the

7    defendant would acquiesce that he has made a mistake here

8    and would pay in full up to this point?

9        **THE COURT:**  No, no, I meant that -- in other

10   words, all the costs of service, all the briefing that

11   you've had to do.

12       In other words, if he really is acting in good

13   faith and this was all about, I need to hire a lawyer,

14   and, you know, get all my eggs in order to come into

15   court, but you've -- and the way you are prejudiced,

16   right, is not on the merits of the case, but you're

17   prejudiced because you've had to -- well, your clients had

18   to pay for you to litigate us to where we are now.

19       But, you know, one of the factors is the

20   merits.  And, again, that's what the Third Circuit wants

21   us to really, really address.

22       So why not make him just at least pay to get us

23   where we are, and if you are willing to do that,

24   hypothetically, what then?

25       **MS. DiBENEDETTO:**  Well, Your Honor, beyond the

1    costs for -- that the plaintiffs have incurred for hiring

2    me, there are additional prejudices that they have

3    incurred, which could be hard to quantify.

4              So the amount of money here has been tied up

5    and has been unusable for this business.

6              You're right that they've had to hire me to do

7    more work in this litigation.  And we have not been able

8    to seek a remedy any other way except through this default

9    judgment because of the defendant's unwillingness to

10   cooperate with the deadlines that were in the summons, to

11   seek out extension, to communicate with us.

12             At this point, the plaintiffs did not seem to

13   have another option except to seek default here.

14             **THE COURT:**  You already got default.

15             **MS. DiBENEDETTO:**  Oh, I'm sorry.  Well, the

16   two-step process.  We've gotten the entry of default, but

17   not the final default.

18             **THE COURT:**  Right.  Default judgment, right.

19             When did you first hear that he finally had a

20   lawyer?

21             **MS. DiBENEDETTO:**  Two business days before the

22   hearing, we heard --

23             **THE COURT:**  You mean two days ago?  Two

24   business days ago?

25             **MS. DiBENEDETTO:**  Thursday afternoon, yes,

1    Your Honor.

2            **THE COURT:**  Okay.  Anything else?

3            **MS. DiBENEDETTO:**  Your Honor, I think we are

4    happy to address the merits that opposing counsel has put

5    forth.  It might be helpful to hear their side first and

6    then we're happy to respond to that.

7            **THE COURT:**  Sure.  That sounds good to me.  All

8    right.  Thank you very much.

9            **MS. DiBENEDETTO:**  Thank you, Judge.

10           **THE COURT:**  Ms. Rychlicki.

11           **MS. RYCHLICKI:**  Good afternoon, Your Honor.

12           **THE COURT:**  Good afternoon.

13           **MS. RYCHLICKI:**  And, again, Helena Rychlicki

14   for Mr. Kiely, the defendant.

15           I will admit that I am new to this case.  I was

16   not engaged until probably less than two weeks ago.

17   Now --

18           **THE COURT:**  Well, then why'd you wait until --

19   when did you file your motion?  Did you file it on Monday?

20           **MS. RYCHLICKI:**  Filed it on Thursday.

21   Thursday.  Last week.

22           **THE COURT:**  Oh, the affidavit was filed on

23   Monday.  Okay.  Yep.  Sorry.  Yep.

24           **MS. RYCHLICKI:**  Right.  Well, it was --

25           **THE COURT:**  That's in front of the plaintiff.

1    Sorry.  I was looking at the plaintiff's filing, not

2    yours.

3              Okay.  So you came in on Thursday?

4         **MS. RYCHLICKI:**  Yes, Your Honor.

5              And there is potential cocounsel who I worked

6    with to draft and file the brief that's in support of

7    Mr. Kiely's motion to set aside the default, and also

8    opposition to plaintiff's motion.

9              And we believe there are merits.  The facts of

10   the case as laid out in the complaint are not as fulsome

11   as they could be.  And I believe that in our brief and the

12   accompanying declaration of Mr. Kiely explains some of the

13   background that occurred in terms of why he did not do

14   this -- avoid this action on purpose.  He had things going

15   on.

16             He was on a business tourist/business visiter

17   visa he had to leave.  He left just less than two weeks

18   after plaintiff's say that he was served.  He has some

19   different comments about that as well.

20             He felt that he was waylaid by being invited to

21   the office to pick up his personal items and also to bring

22   someone with him, and when he arrived, he was presented

23   with someone who said you've been served.  And I don't

24   know whether he actually accepted the summons or not.

25             In his declaration, he says he did not.  In the

1    affidavit that was filed yesterday, the declarant says

2    that he did.  Be that as it may, he did not leave with it.

3    After he moved back to Ireland, he asked them to mail

4    things to him in an e-mail address.  It was not done.  And

5    his wife became ill, and so he was distracted by that.

6          So those are some of the facts that I think

7    explain why it took Mr. Kiely so long to focus on this

8    case.

9          Your question about paying the costs that have

10   been incurred thus far by the plaintiffs, I don't know the

11   answer to that.  I would have to go to Mr. Kiely and see

12   what his thoughts are on that.  But I do believe that he

13   has meritorious defenses.

14         And, again, the Third Circuit does show that

15   there's a strong presumption in favor of resolving cases

16   on the merits.  And he really wants to get to the merits

17   of the case and is ready to defend this action.

18         **THE COURT:**  Give me one second.

19         Can you direct me to, in your papers, and in

20   particular in the declaration, what your client is putting

21   forward as justification for his failure to respond from

22   June 2nd of this year, until last Thursday?

23         All right.  I mean, I don't think it's

24   disputed, right, that he was served with a motion for

25   default judgment on June 2nd, his counsel Mr. Lindhé.

1          **MS. RYCHLICKI:**  Your Honor, in Mr. Kiely's

2     declaration, on page 5, paragraphs 15 --

3          **THE COURT:**  Right.

4          **MS. RYCHLICKI:**  -- he discusses that and says

5     his Swedish attorney did receive the motion, but that he,

6     Mr. Kiely, contacted someone at Plaintiff Xhail.  And --

7          **THE COURT:**  So who was it?

8          **MS. RYCHLICKI:**  I --

9          **THE COURT:**  Like, there's no details, right?

10    That's the problem with his affidavit.  It's very, very

11    general.

12         **MS. RYCHLICKI:**  Yes, Your Honor.

13         **THE COURT:**  Do you think he could have -- he

14    could have, actually, tell us who this executive was, and

15    then they could say, oh, we know who it is.

16         **MS. RYCHLICKI:**  I don't have that information

17    today.  I would have to ask that.

18         **THE COURT:**  All right.  So you don't know who

19    that is, but he says, I'm right with you.  So he says, I

20    contacted an executive, an unnamed executive at Xhail.

21         Ms. DiBenedetto, do you dispute that?

22         **MS. DiBENEDETTO:**  Yes.  Yes, Your Honor.

23         **THE COURT:**  All right.  And tell me about --

24    have you been able to identify an Xhail executive?

25         **MS. DiBENEDETTO:**  We have not been able to

1    identify and Xhail exec -- and I'm sorry, to rephrase your

2    question, we're referring to the Swedish attorney

3    Christian Lindhé.

4         THE COURT:  Well, what I'm referring to is in

5    the declaration of Mr. Kiely on Paragraph 15, Page 5, he

6    says, "On June 3rd, my attorney in Sweden received

7    plaintiff's motion for default judgment," which I think is

8    the same -- this is the attorney Christian Lindhé

9    referenced in your letter, DI-13, I'm assuming, right?

10        MS. DiBENEDETTO:  Yes, Your Honor.

11        THE COURT:  All right.  So basically, that's --

12   it's undisputed, I think, that you all served a motion,

13   your motion for default judgment, on his Swedish attorney,

14   undisputed.

15        MS. DiBENEDETTO:  That's correct.

16        THE COURT:  And that's what I want to parse

17   through then.  So what does he do?  Because the fourth

18   factor is, let's look at what he did, his conduct, right?

19        So and in his affidavit, he says, I immediately

20   contacted an executive at Xhail.

21        MS. DiBENEDETTO:  And, Your Honor, I do not

22   have the facts, so I do not know what executive he's

23   referring to in that part of the --

24        THE COURT:  Right.  And do you know of any

25   executive at Xhail that received a call on June 3rd, as

1    you sit here today?  I mean --

2              **MS. DiBENEDETTO:**  I do not, Your Honor.

3              **THE COURT:**  Okay.  All right.  So then, go

4    ahead.  So let's go through his affidavit.  It's very

5    general, and an unidentified Xhail exec.  And he says that

6    he stated the motion was not helpful to ongoing

7    negotiations.

8              **MS. RYCHLICKI:**  Right.

9              **THE COURT:**  And he basically says, you're

10   trying to intimidate me.  Okay.

11             **MS. RYCHLICKI:**  Yes, sir.  And then he states

12   that this unnamed executive responded by asking Mr. Kiely

13   to pause a bit further while they discussed how to proceed

14   with settlement negotiations, because it was earlier in

15   his declaration, he talks about there were settlement

16   talks going on.

17             In terms of what actually happened after his

18   call or -- I don't know how that communication occurred.

19   He says "contacted," so I'm not sure if that was by phone

20   or by e-mail.

21             You are correct, there is nothing else that

22   discusses what went on after June 3rd.

23             I'm assuming, and I hate to do that, but if he

24   truly was asked to pause a bit further, then I would think

25   that that's what he did.  Mr. Kiely, that is.

1          **THE COURT:**  Uh-huh.  What does he do right now,

2     Mr. Kiely?

3          **MS. RYCHLICKI:**  I do not know.  I'm not sure.

4          I know he's been caring for his wife who was in

5     the hospital.

6          **THE COURT:**  That's very general.

7          **MS. RYCHLICKI:**  Yes.

8          **THE COURT:**  Very general.  And if I recall, and

9     we'll look it up -- yeah, he says since May.  You know,

10    this is a guy who's getting $17,500 a month for rent.  It

11    doesn't sound like somebody who's hurting for money.

12         **MS. RYCHLICKI:**  Well --

13         **THE COURT:**  And so when he says he's got

14    limited means because he resides in Ireland.  He has homes

15    in Ireland and California; is that right?

16         **MS. RYCHLICKI:**  What I understand is that when

17    he was in the United States, and this is what I've gleaned

18    from some of the reading I've been able to do -- he --

19    that Xhail was paying for his housing in the

20    United States.  That is before the loans, the agreements

21    that were made for the loans.

22         But and then when, my understanding, from what

23    Mr. Kiely says, is that when they -- when the plaintiffs

24    wanted to change the arrangement for his housing, for an

25    accounting benefit for themselves, they provided him a

1    raise in his salary that was equal to the monthly payment.

2    So that when he was terminated -- and his understanding

3    was, is that he was going to continue his employment, and

4    that money would not have made any difference to him

5    because it was a raise in that amount.

6          I don't know what kind of housing he has in

7    Ireland.  You know, presumably, he does live somewhere in

8    the country.

9          **THE COURT:**  What's the best evidence we have of

10    when the complaint was served first on the defendant?

11          **MS. DiBENEDETTO:**  The best evidence is the

12    affidavit of the process server, which was filed on the

13    docket.  We also have Mr. Kiely's own declaration, which

14    indicated that he was handed the complaint.  We also have

15    an affidavit from an Xhail --

16          **THE COURT:**  And what's the date that we have

17    that he was served with the complaint?

18          **MS. DiBENEDETTO:**  Oh, I'm sorry.

19          The date of service, when he was handed the

20    complaint, was May 3rd.

21          **THE COURT:**  May 3rd of this year?

22          **MS. DiBENEDETTO:**  Yes.  Yes, Your Honor.

23          **THE COURT:**  Who has the burden here?

24          **MS. RYCHLICKI:**  In terms of?

25          **THE COURT:**  Well, I mean -- first of all, what

1    is really pending before me at this point?  There's a

2    motion for entry of judgment, right, default judgment?

3              **MS. RYCHLICKI:**  Yes.  And there's --

4          **THE COURT:**  That burden is on them.

5              **MS. RYCHLICKI:**  Right.  And our motion -- it's

6    our motion to set aside the default.  It's our burden for

7    our motion.

8          **THE COURT:**  Okay.  And you mention the four

9    prongs.  You don't have any case here.  But you will

10   agree, at the beginning, but you'll agree that under

11   United States against $55,518.05 in U.S. currency, that

12   the first question is whether the plaintiff will be

13   prejudiced, right?

14             **MS. RYCHLICKI:**  Correct.

15         **THE COURT:**  Clearly, the plaintiff is going to

16   be prejudiced, where I'd have to set aside the entry of

17   default, correct?

18             **MS. RYCHLICKI:**  Somewhat, yes, Your Honor.

19         **THE COURT:**  Somewhat?  I mean, they're going to

20   have a judgment of over $200,000 if I grant the judgment,

21   right?  So the prejudice --

22             **MS. RYCHLICKI:**  That's true.

23         **THE COURT:**  So that is denied, your motion to

24   set aside the entry, right.

25             The second is, whether the defendant has a

1    meritorious defense.  All right.  And to satisfy that

2    prong, you have to establish that it would be a complete

3    defense, correct?

4              **MS. RYCHLICKI:**  Yes, Your Honor.

5              **THE COURT:**  How would his proffered defense be

6    a complete defense?  What exactly is his proffered

7    defense?

8              **MS. RYCHLICKI:**  Well, we spelled them out in

9    our brief.

10             **THE COURT:**  Right.

11             **MS. RYCHLICKI:**  That he was fraudulently

12   induced into signing the purported loan agreements.  He

13   was told that the -- that they would not actually be

14   loans, that his salary would be increased to pay the

15   monthly rent.

16             The fact that those monthly or bimonthly

17   payments went on for, I believe, 57 payments -- I don't

18   want to be quoted on that, but it was over 50 -- means

19   that it was understood between the parties that he was

20   going to be unemployed for that time because that was the

21   way it was going to be paid, was with this increase in his

22   salary.

23             Secondly, there is a lack of consideration for

24   him.  I mean, it was -- this was something that was

25   brought to him by plaintiffs in order for them to have an

1      accounting benefit, by not paying for his housing rents

2      directly, but having it be paid out of his salary.

3              Yeah.  In addition, because of the change in

4      his employment, and he claims that it was an improper

5      termination.  And so there was a gross change in his

6      circumstances that affected his ability to continue with

7      making any payments that he did not believe that he would

8      be making on his own in the first place.

9              **THE COURT:**  Okay.

10             **MS. RYCHLICKI:**  So I believe if he can show

11     that the loans were a pretense, in terms of giving

12     plaintiffs an opportunity to have a financial benefit

13     based on what was occurring, that would be a full defense

14     to having to make these -- to the breach of contract

15     because there really wasn't a contract in the sense that

16     plaintiffs have presented it.

17             **THE COURT:**  All right.  And then the third

18     factor goes to his culpable conduct.  The burden is on you

19     to establish that, right?  That he wasn't culpable?

20             **MS. RYCHLICKI:**  Yes, Your Honor.

21             **THE COURT:**  And we have a -- basically a

22     conclusory affidavit to do that.  And it's a discretionary

23     call on my part?

24             **MS. RYCHLICKI:**  Yes, Your Honor.  It is

25     discretionary.

1          **THE COURT:**  Okay.  Anything else?

2          **MS. RYCHLICKI:**  No, Your Honor, not unless you

3     have another question.

4          **THE COURT:**  No.

5          All right.  Ms. DiBenedetto, can you come up

6     for a second?

7          Have you had a chance -- an opportunity to

8     fulsomely respond as you want to the filings of the

9     defendant?

10          **MS. DiBENEDETTO:**  Not yet, Your Honor.

11          **THE COURT:**  So let me ask you:  What would you

12     prefer to do?

13          See, in a way, I like to be practical about

14     these things.  Is your client ready for trial?

15          **MS. DiBENEDETTO:**  Not at this moment,

16     Your Honor.

17          **THE COURT:**  Right.  But probably could get

18     ready pretty quick?

19          **MS. DiBENEDETTO:**  Yes, Your Honor.

20          **THE COURT:**  Well, what if what we do is, we

21     say, I won't enter default, but I'll set a quick trial

22     date.  Basically, whatever you want.

23          Because it really does bother me, if I were to

24     set aside the entry of default, that this -- I'm not going

25     to use the word "gentleman" -- but this person, Mr. Kiely,

1    would basically be rewarded for ignoring Court filings,

2    and for not taking seriously that there was judicial

3    process going on in our country.  And then he, at the last

4    minute, when he knows the gig is up, he gets a lawyer to

5    walk in here.  That bothers me.  And it does seem

6    purposeful.

7             But on the other hand, I have a very scarce

8    record before me to make that conclusion.  So one way,

9    though, is, I can completely control the docket timing or

10   the timing of the case, I should say, not the docket.  And

11   so, you know, we could basically balance out the prejudice

12   your client suffered.

13            And the one thing I am bothered by, that would

14   favor the defense here is, the case is not that old.

15            **MS. DiBENEDETTO:**  Your Honor, there is one more

16   aspect of prejudice that we haven't discussed yet, and

17   that is solvency of the defendant, which is unknown, but

18   potentially doubtful at this point.

19            As you mentioned, he spent thousands and

20   thousands of dollars on rent per month on multiple homes.

21   It's unclear what the state of his assets are.  He

22   relocated from Ireland just a few weeks after being served

23   the complaint.

24            So even though it's been a short time, he has

25   had time to adjust his circumstances, potentially.  And

1    it's possible that through this litigation and the cost of

2    battling this litigation, too, any assets he might have

3    might dissolve.

4            **THE COURT:**  What about the meritorious defense

5    prong?

6            **MS. DiBENEDETTO:**  Yes, Your Honor.

7            Delaware recognizes the parol evidence rule,

8    and so unless there is an ambiguity on the face of the

9    contracts, the other evidence that defendants have put

10   forth in the declaration would not come into play in

11   interpreting these contracts.

12           **THE COURT:**  What about the alleged fraud and

13   coercion?

14           **MS. DiBENEDETTO:**  As Mr. Kiely acknowledged in

15   his declaration, he was chairman of the board of directors

16   of Xhail, Inc., and founding director of Xhail USA,

17   Incorporated, in Paragraph 5 in his declaration.

18           So it does not seem reasonable to believe that

19   he was coerced or forced into these contracts and with the

20   threat of losing his job or his home.

21           And, furthermore, these loans were specifically

22   to give him an increase in his life-style.  He

23   acknowledged in his declaration, that prior to these

24   agreements, he was paid for a "relatively small apartment

25   for my family and me."  That's a quote from paragraph 22

1    of the declaration.

2            And as a result of the loans, Mr. Kiely

3    upgraded his living circumstance considerably from that

4    small apartment into what he describes as larger housing

5    and furnishings for the new housing.  So $270,000 for

6    housing and furnishings.

7            That's a big increase in lifestyle.  And to

8    defendant's point regarding the consideration of the

9    contract, it seems like a bargain for consideration in

10   that it was -- these contracts required no down payment,

11   no collateral, a 3 percent per annum interest rate.

12           They seem to benefit Mr. Kiely in many ways.

13           **THE COURT:**  Okay.  Anything else?

14           **MS. DiBENEDETTO:**  No, Your Honor.

15           **THE COURT:**  All right.  Thank you.

16           **MS. RYCHLICKI:**  Your Honor, could I address the

17   leaving the country?

18           **THE COURT:**  You can address whatever you want,

19   please.  I'm giving you the opportunity.

20           **MS. RYCHLICKI:**  Thank you.

21           It was mentioned that Mr. Kiely left the

22   country approximately two weeks after what plaintiffs call

23   a service, in which Mr. Kiely says was not.  I won't

24   debate that.  But he left because of his visa status.  He

25   was -- his visa status --

1          **THE COURT:** And where is that in the affidavit?

2          **MS. RYCHLICKI:** It is not in the affidavit.

3          **THE COURT:** Yeah. I mean, how -- you know what

4    I'm inclined to do -- let me just ask about this. It's

5    like, I don't think you really met the burden, right? So

6    I enter judgment.

7          You could always move to set aside a judgment,

8    right, after it's set? And maybe get your client to be a

9    little bit more specific. And if he wants to say he left

10   the country for the reasons he did, put forth some

11   evidence.

12         Right? You would always have that remedy. And

13   I mean, because it's inexplicable how, after June 3rd, he

14   did nothing to come here until October 13th, right?

15   Nothing. I want to make sure I'm not misstating the

16   record.

17         **MS. RYCHLICKI:** That's what you glean from his

18   affidavit, Your Honor, yes.

19         **THE COURT:** So I will grant default judgment

20   for that reason. I don't think that you've met the

21   factors called for by the currency in the $55,000 currency

22   case set forth by the Third Circuit.

23         And I find that the affidavit provided just

24   conclusory evidence. It's not sufficient to satisfy me,

25   that we don't have anything but a bad faith actor here.

1    And so I'm going to enter default judgment.  All right.

2              I'm going to sign the proposed order provided

3    to me by the plaintiff.  And I mean, I'm not precluding

4    that there could be a motion to set aside entry of a

5    default judgment and, I guess, get a second bite at the

6    apple.

7              If you're going to do that, I think you need to

8    tell your client, not only to take more seriously judicial

9    process in the United States, but to be specific in an

10   affidavit and put forth evidence to support his

11   assertions.  All right?

12             **MS. RYCHLICKI:**  Yes, Your Honor.  Thank you.

13             **THE COURT:**  All right.  Anything else?

14             **MS. DiBENEDETTO:**  No, Your Honor.

15             **THE COURT:**  All right.  Thank you very much.

16             We're adjourned.

17

18

19             (The proceedings concluded at 2:33 p.m.)

20

21

22

23

24

25

1

2                    CERTIFICATE OF COURT REPORTER

3

4        I hereby certify that the foregoing is a true and

5   accurate transcript from my stenographic notes in the

6   proceeding.

7
                                        /s/ Bonnie R. Archer
8                                       Bonnie R. Archer
                                        Official Court Reporter
9                                         U.S. District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MS. DiBENEDETTO: [31]
MS. RYCHLICKI: [39]
THE COURT: [71]

**$**

$17,500 [1]  13/10
$200,000 [1]  15/20
$270,000 [1]  21/5
$55,000 [1]  22/21
$55,518.05 [1]  15/11
$60,000 [1]  4/16

**/**

/s [1]  24/7

**1**

13 [1]  11/9
13th [1]  22/14
15 [2]  10/2 11/5
18 [1]  1/11

**2**

2022 [1]  1/11
22 [1]  20/25
22-579-CFC [1]  1/5
2:00 [2]  1/11 2/4
2:33 [1]  23/19
2nd [1]  9/25

**3**

3 percent [1]  21/11
3rd [5]  11/6 11/25 12/22 14/20 22/13
3rd of [1]  14/21

**5**

50 [1]  16/18
57 [1]  16/17

**8**

844 [1]  1/14

**A**

abide [1]  4/20
ability [1]  17/6
able [4]  6/7 10/24 10/25 13/18
about [11]  3/8 5/5 5/13 8/19 9/9 10/23 12/15 18/13 20/4 20/12 22/4
accepted [1]  8/24
accompanying [1]  8/12
accounting [2]  13/25 17/1
accurate [1]  24/5
acknowledged [2]  20/14 20/23
acquiesce [1]  5/7
acting [1]  5/12
action [2]  8/14 9/17
actor [1]  22/25
actually [4]  8/24 10/14 12/17 16/13
addition [1]  17/3
additional [1]  6/2
address [6]  3/7 5/21 7/4 9/4 21/16 21/18
adjourned [1]  23/16
adjust [1]  19/25
admit [1]  7/15
affected [1]  17/6
affidavit [13]  7/22 9/1 10/10

11/19 12/4  14/12 14/15 17/22
22/1 22/2 22/16 22/23 23/10
after [8]  8/18 9/3 12/17 12/21
19/22 21/22 22/8 22/13
afternoon [6]  2/5 2/9 2/10
6/25 7/11 7/12
again [3]  5/20 7/13 9/14
against [1]  15/11
ago [3]  6/23 6/24 7/16
agree [2]  15/10 15/10
agreement [1]  4/16
agreements [5]  4/15 4/21
13/20 16/12 20/24
ahead [1]  12/4
all [25]
alleged [1]  20/12
already [1]  6/14
also [4]  8/7 8/21 14/13 14/14
Although [1]  2/15
always [2]  22/7 22/12
am [3]  3/11 7/15 19/13
ambiguity [1]  20/8
amount [2]  6/4 14/5
annum [1]  21/11
another [2]  6/13 18/3
answer [1]  11/11
any [8]  3/6 3/23 6/8 11/24
14/4 15/9 17/7 20/2
anything [5]  7/2 18/1 21/13
22/25 23/13
apartment [1]  20/24 21/4
appear [1]  4/13
APPEARANCES [1]  1/19
appearing [1]  4/6
apple [1]  23/6
approximately [1]  21/22
Archer [2]  24/7 24/8
are [16]  3/17 4/15 5/1 5/6
5/15 5/18 5/23 5/23 6/2 7/3
8/9 8/10 9/6 9/12 12/21 19/21
arrangement [1]  13/24
arrived [1]  8/22
as [13]  4/3 8/10 8/10 8/11
8/19 9/2 9/21 11/25 18/8
19/19 20/14 21/2 21/4
aside [9]  3/21 5/3 8/7 15/6
15/16 15/24 18/24 22/7 23/4
ask [3]  3/20 10/17 11/22 11/4
asked [2]  9/3 12/24
asking [1]  12/12
aspect [1]  19/16
assertions [1]  23/11
assets [2]  19/21 20/2
assuming [2]  11/9 12/23
attorney [5]  10/5 11/2 11/6
11/8 11/13
avoid [1]  8/14

**B**

back [2]  3/12 9/3
background [1]  8/13
bad [2]  4/7 22/25
balance [1]  19/11
bargain [1]  21/9
based [1]  17/13
basically [6]  11/11 12/9 17/21
18/22 19/1 19/11
battling [1]  20/2
be [25]
became [1]  9/5

because [12]  5/17 6/9 11/17
12/1 13/14  14/5 16/20 17/9
17/15 18/23 21/24 22/13
been [11]  4/8 6/6 6/7 8/23
9/10 10/24 10/25 13/4 13/18
19/24
before [8]  1/16 2/15 4/14 4/21
6/21 13/20 15/1 19/8
beginning [2]  2/3 15/10
being [4]  4/9 4/10 8/20 19/22
believe [7]  8/9 8/11 9/12
16/17 17/7 17/10 20/18
benefit [4]  13/25 17/1 17/12
21/12
best [2]  14/9 14/11
between [1]  16/19
beyond [2]  4/14 5/25
big [1]  21/7
bimonthly [1]  16/16
bit [3]  12/13 12/24 22/9
bite [1]  23/5
board [1]  20/15
Bonnie [2]  24/7 24/8
bother [1]  18/23
bothered [1]  19/13
bothers [1]  19/5
breach [1]  17/14
brief [3]  8/6 8/11 16/9
briefing [1]  5/10
bring [1]  8/21
brought [1]  16/25
burden [5]  14/23 15/4 15/6
17/18 22/5
business [5]  6/5 6/21 6/24
8/16 8/16

**C**

C.A [1]  1/5
California [1]  13/15
call [4]  11/25 12/18 17/23
21/22
called [1]  22/21
can [6]  3/23 9/19 17/10 18/5
19/9 21/18
caring [1]  13/4
case [14]  2/17 2/18 3/23 3/25
4/9 5/16 7/15 8/10 9/8 9/17
15/9 19/10 19/14 22/22
cases [3]  3/9 4/2 9/15
ceased [1]  4/18
CERTIFICATE [1]  24/2
certify [1]  24/4
CFC [1]  1/5
chairman [1]  20/15
chance [1]  18/7
change [3]  13/24 17/3 17/5
Christian [1]  11/3 11/8
Christian Lindhé [2]  11/3 11/8
Circuit [5]  3/9 3/15 5/20 9/14
22/22
circumstance [1]  21/3
circumstances [2]  17/6 19/25
claims [1]  21/3
Clearly [1]  15/15
client [5]  9/20 18/14 19/12
22/8 23/8
clients [1]  5/17
cocounsel [1]  8/5
coerced [1]  20/19

coercion [1]  20/13
collateral [1]  21/6
COLM [1]  1/16
come [4]  5/14 18/5 20/10
22/14
commenced [1]  2/3
comments [1]  8/19
communicate [1]  6/11
communication [1]  12/18
complaint [8]  4/10 4/11 8/10
14/10 14/14 14/17 14/20
19/23
complete [2]  16/2 16/6
completely [1]  16/9
concluded [1]  23/19
conclusion [1]  19/8
conclusory [1]  17/22 22/24
conduct [2]  11/18 17/18
CONNOLLY [1]  1/16
consider [1]  4/3
considerably [1]  21/18
consideration [3]  16/23 21/8
21/9
contacted [4]  10/6 10/20
11/20 12/19
contents [1]  3/4
continue [2]  14/3 17/6
continuing [1]  4/12
contract [3]  17/14 17/15 21/9
contracts [4]  20/9 20/11 20/19
21/10
control [1]  19/9
cooperate [1]  6/10
copy [1]  4/11
correct [5]  11/15 12/21 15/14
15/17 16/3
cost [1]  20/1
costs [4]  4/25 5/10 6/1 9/9
could [10]  6/3 8/11 10/13
10/14 10/15 18/17 19/11
21/16 22/7 23/4
counsel [3]  1/24 7/4 9/25
country [5]  14/8 19/3 21/17
21/22 22/10
court [7]  1/1 1/16 5/15 19/1
24/2 24/8 24/9
courtesy [2]  4/10 4/11
courtroom [1]  2/3
culpability [1]  4/5
culpable [2]  17/18 17/19
currency [3]  15/11 22/21
22/21

**D**

damages [1]  3/5
date [3]  14/16 14/19 18/22
days [3]  6/21 6/23 6/24
deadlines [1]  6/10
debate [1]  21/24
declarant [1]  9/1
declaration [12]  8/12 8/25
9/20 10/2 11/5 12/15 14/13
20/10 20/15 20/17 20/23 21/1
default [27]
defend [1]  9/17
defendant [10]  1/7 1/24 4/5
4/9 5/7 7/14 14/10 15/25 18/9
19/17
defendant's [1]  4/4 6/9 21/8
defendants [1]  20/9

D

defense [8]  16/1 16/3 16/5 16/6 16/7 17/13 19/14 20/4
defenses [1]  9/13
DELAWARE [3]  1/2 1/14 20/7
delinquency [1]  4/20
denied [1]  15/23
describes [1]  21/4
design [1]  3/25
details [1]  10/9
DI [1]  11/9
DI-13 [1]  11/9
DIBENEDETTO [4]  1/21 2/6 10/21 18/5
did [15]  3/3 6/12 6/19 7/19 7/19 8/13 8/25 9/2 9/2 10/5 11/18 12/25 17/7 22/10 22/14
difference [1]  14/4
different [1]  8/19
direct [1]  9/19
directly [1]  17/2
director [1]  20/16
directors [1]  20/15
discretionary [2]  17/22 17/25
discuss [1]  3/4
discussed [2]  12/13 19/16
discusses [2]  10/4 12/22
disfavor [1]  3/15
disposition [1]  3/9
dispute [1]  10/21
disputed [1]  9/24
dissolve [1]  20/3
distracted [1]  9/5
DISTRICT [4]  1/1 1/2 1/16 24/9
do [23]  3/1 5/2 5/11 5/23 6/6 8/13 9/12 10/13 10/21 11/17 11/21 11/22 11/24 12/2 12/23 13/1 13/3 13/18 17/22 18/12 18/20 22/4 23/7
docket [3]  14/13 19/9 19/10
does [7]  9/14 11/7 13/1 14/7 18/23 19/5 20/18
doesn't [1]  13/11
dollars [1]  19/20
don't [12]  8/23 9/10 9/23 10/16 10/18 12/18 14/6 15/9 16/17 22/5 22/20 22/25
done [1]  9/4
doubtful [1]  19/18
down [1]  21/10
draft [1]  8/6
due [1]  4/16

E

e-mail [2]  9/4 12/20
earlier [1]  12/14
eggs [1]  5/14
else [5]  7/2 12/21 18/1 21/13 23/13
EMILY [1]  1/21
employee [1]  4/17
employment [2]  14/3 17/4
engaged [1]  7/16
enter [3]  18/21 22/6 23/1
entirely [1]  4/19
entry [6]  6/16 15/2 15/16 15/24 18/24 23/4
equal [1]  14/1

ESQ [2]  1/21 1/23
establish [2]  16/24 17/6
even [3]  4/14 4/21 19/24
everybody [1]  3/12
evidence [7]  14/9 14/11 20/7 20/9 22/11 22/24 23/10
exactly [1]  16/6
except [2]  6/8 6/13
exec [2]  11/1 12/5
executive [8]  10/14 10/20 10/20 10/24 11/20 11/22 11/25 12/12
explain [1]  9/7
explains [1]  8/12
extended [1]  4/21
extension [1]  6/11

F

face [1]  20/8
fact [1]  16/16
factor [2]  11/18 17/18
factors [4]  3/16 4/3 5/19 22/21
facts [3]  8/9 9/6 11/22
failed [1]  4/17
failure [1]  9/21
fairest [1]  5/4
faith [3]  4/7 5/13 22/25
family [1]  20/25
far [1]  9/10
favor [3]  3/17 9/15 19/14
favoring [1]  3/9
felt [1]  8/20
few [1]  19/22
file [3]  7/19 7/19 8/6
filed [5]  4/14 7/20 7/22 9/1 14/12
filing [1]  8/1
filings [2]  18/8 19/1
final [1]  6/17
finally [1]  6/19
financial [1]  17/12
find [1]  22/23
first [8]  3/7 4/19 6/19 7/5 14/10 14/25 15/12 17/8
focus [1]  9/7
forced [1]  20/19
foregoing [1]  24/4
forth [5]  7/5 20/10 22/10 22/22 23/10
forward [3]  2/24 5/4 9/21
founding [2]  20/16
four [1]  15/8
fourth [1]  11/17
fraud [1]  20/12
fraudulently [1]  16/11
front [1]  7/25
full [2]  5/8 17/13
fulsome [1]  8/10
fulsomely [1]  18/8
furnishings [2]  21/5 21/6
further [2]  12/13 12/24
furthermore [1]  20/21

G

general [5]  3/8 10/11 12/5 13/6 13/8
gentleman [1]  18/25
get [7]  5/1 5/14 5/22 9/16 18/17 22/8 23/5
gets [1]  19/4

getting [2]  4/10 13/10
gig [1]  19/4
give [2]  9/18 20/22
giving [2]  17/11 21/19
glean [1]  22/17
gleaned [1]  13/17
go [4]  5/4 9/11 12/3 12/4
goes [1]  17/18
going [12]  8/14 12/16 14/3 15/15 15/19 16/20 16/21 18/24 19/3 23/1 23/2 23/7
good [7]  2/5 2/9 2/10 5/12 7/7 7/11 7/12
got [2]  6/14 13/13
gotten [1]  6/16
grant [2]  15/20 22/19
granting [1]  3/17
gross [1]  17/5
guess [2]  2/21 23/5
guy [1]  13/10

H

had [9]  5/11 5/17 5/17 6/6 6/19 8/14 8/17 18/7 19/25
hand [2]  4/10 19/7
handed [2]  14/14 14/19
happened [1]  12/17
happy [2]  7/4 7/6
hard [2]  3/25 6/3
has [14]  3/6 4/8 4/21 5/7 6/4 6/5 7/4 8/18 9/13 13/14 14/6 14/23 15/25 19/24
hate [1]  12/23
have [36]
haven't [1]  19/16
having [2]  17/2 17/14
having it be [1]  17/2
he [85]
he's [4]  5/2 11/22 13/4 13/13
hear [2]  6/19 7/5
heard [2]  4/1 6/22
hearing [2]  1/12 6/22
HELENA [2]  7/23 7/13
Helena Rychlicki [1]  7/13
helpful [2]  7/5 12/6
here [15]  3/11 3/17 3/19 4/15 4/23 5/7 6/4 6/13 12/1 14/23 15/9 19/5 19/14 22/14 22/25
hereby [1]  24/4
him [8]  5/22 8/22 9/4 13/25 14/4 16/24 16/25 20/22
hire [2]  5/13 6/6
his [44]
home [1]  20/20
homes [2]  13/14 19/20
Honor [36]
HONORABLE [1]  1/16
hospital [1]  13/5
housing [7]  13/19 13/24 14/6 17/1 21/4 21/5 21/6
how [5]  12/13 12/18 16/5 22/3 22/13
However [1]  3/16
huh [1]  13/1
hurting [1]  13/11
hypothetically [1]  5/24

I

I'd [2]  5/2 15/16

I'll [2]  5/3 18/21
I'm [19]  3/6 6/19 10/9 11/1 11/4 11/9 12/19 12/23 13/3 14/18 18/24 21/19 22/4 22/15 23/1 23/2 23/3
I've [3]  2/15 13/17 13/18
identify [2]  10/24 11/1
ignoring [1]  19/1
ill [1]  9/5
imagine [1]  4/1
immediately [1]  11/19
improper [1]  17/2
INC [3]  1/3 1/3 20/16
inclined [1]  22/4
including [1]  4/4
Incorporated [1]  20/17
increase [3]  16/21 20/22 21/7
increased [1]  16/14
incurred [4]  4/25 6/1 6/3 9/10
indicated [1]  14/14
induced [1]  16/12
inexplicable [1]  22/13
information [1]  10/16
interest [1]  21/11
interpreting [1]  20/11
intimidate [1]  12/10
invited [1]  8/20
inviting [1]  3/11
Ireland [5]  9/3 13/14 13/15 14/7 19/22
is [51]
issued [1]  3/18
it [32]
it's [15]  3/25 9/23 10/10 11/12 12/4 15/5 15/6 17/22 19/21 19/24 20/1 22/4 22/8 22/13 22/24
items [1]  8/21

J

job [1]  20/20
joined [1]  2/19
JOYCE [1]  1/23
Judge [2]  1/16 7/9
judgment [18]  2/25 3/17 3/22 4/12 6/9 6/25 9/25 11/7 11/13 15/2 15/2 15/20 15/20 22/6 22/7 22/19 23/1 23/5
judgments [1]  3/16
judicial [2]  19/2 23/8
June [6]  9/22 9/25 11/6 11/25 12/22 22/13
June 2nd [1]  9/25
June 2nd of [1]  9/22
June 3rd [4]  11/6 11/25 12/22 22/13
just [9]  2/18 3/8 3/11 3/20 5/22 8/17 19/22 22/4 22/23
justification [1]  9/21

K

KELLER [1]  1/20
KIELY [18]  1/6 4/17 7/14 8/12 9/7 9/11 10/6 11/5 12/12 12/25 13/2 13/23 18/25 20/14 21/2 21/12 21/21 21/23
Kiely's [3]  8/7 10/1 14/13
kind [1]  14/6
King [1]  1/14
know [17]  3/20 5/14 5/19 8/24

## K

know... [13]  9/10 10/15 10/18
11/22 11/24 12/18 13/13 13/4
13/9 14/6 14/7 19/11 22/3
knows [1]  19/4

## L

lack [3]  3/5 4/4 16/23
laid [1]  8/10
larger [1]  21/4
last [3]  7/21 9/22 19/3
later [1]  4/18
lawsuit [1]  4/14
lawyer [3]  5/13 6/20 19/4
least [1]  5/22
leave [2]  8/17 9/2
leaving [1]  21/17
left [4]  8/17 21/21 21/24 22/9
less [2]  7/16 8/17
let [3]  3/20 18/11 22/4
let's [4]  2/23 4/24 11/18 12/4
letter [1]  11/9
life [1]  20/22
life-style [1]  20/22
lifestyle [1]  21/7
like [6]  3/6 10/9 13/11 18/13
21/9 22/5
limited [1]  13/14
Lindhé [3]  9/25 11/3 11/8
litigate [1]  5/18
litigation [5]  4/13 4/21 6/7
20/1 20/2
little [1]  22/9
live [1]  14/7
living [1]  21/3
LLC [1]  1/23
loan [5]  4/15 4/16 4/19 4/20
16/12
loans [6]  13/20 13/21 16/14
17/11 20/21 21/2
long [1]  9/7
look [2]  11/18 13/9
looking [1]  8/1
losing [1]  20/20

## M

made [3]  5/7 13/21 14/4
mail [3]  9/3 9/4 12/20
make [4]  5/22 17/14 19/8
22/15
many [2]  4/2 21/12
may [4]  9/2 13/9 14/20 14/21
May 3rd [1]  14/20
maybe [1]  22/8
me [18]  2/24 3/20 6/2 6/6 7/7
9/18 9/19 10/23 12/10 15/1
18/11 18/23 19/5 19/8 20/25
22/4 22/24 23/3
mean [6]  6/23 9/23 12/1 14/25
15/19 16/24 22/3 22/13 23/3
means [2]  13/14 16/18
meant [1]  5/9
mention [1]  15/8
mentioned [3]  9/13 19/21 21/1
meritorious [3]  9/13 16/1 20/4
merits [8]  3/10 4/4 4/16 5/20
7/4 8/9 9/16 9/16
met [2]  22/5 22/20

## MICHAEL [1]  1/6

might [3]  7/5 20/2 20/3
minute [1]  19/4
misstating [1]  22/15
mistake [1]  5/7
moment [1]  18/15
Monday [2]  7/19 7/23
money [4]  3/13 6/4 13/11 14/4
month [2]  13/10 19/20
monthly [3]  14/1 16/15 16/16
months [1]  4/22
more [5]  3/13 6/7 19/15 22/9
23/8
motion [17]  1/12 4/11 7/19 8/7
8/8 9/24 10/5 11/7 11/12
11/13 12/6 15/2 15/5 15/6
15/7 15/23 23/4
move [3]  2/24 5/4 22/7
moved [1]  9/3
Mr. [21]  4/17 7/14 8/7 8/12
9/7 9/11 9/25 10/1 10/6 11/5
12/12 12/25 13/2 13/23 14/13
18/25 20/14 21/2 21/12 21/21
21/23
Mr. Kiely [17]  4/17 7/14 8/12
9/7 9/11 10/6 11/5 12/12
12/25 13/2 13/23 18/25 20/14
21/2 21/12 21/21 21/23
Mr. Kiely's [3]  8/7 10/1 14/13
Mr. Lindhé [1]  9/25
Ms. [5]  2/6 2/11 7/10 10/21
18/5
Ms. DiBenedetto [3]  2/6 10/21
18/5
Ms. Rychlicki [2]  2/11 7/10
much [3]  3/13 7/8 23/15
multiple [1]  19/20
my [7]  4/1 5/14 11/6 13/22
17/23 20/25 24/5

## N

need [2]  5/13 23/7
needed [1]  3/13
negotiations [2]  12/7 12/14
never [1]  3/21
new [2]  7/15 21/5
no [10]  1/15 5/9 5/9 10/9 18/2
18/4 21/10 21/11 21/14 23/14
not [50]
notes [1]  24/5
nothing [3]  12/21 22/14 22/15
now [4]  4/6 5/18 7/17 13/1

## O

occurred [2]  8/13 12/18
occurring [1]  17/13
October [2]  1/11 22/14
October 13th [1]  22/14
off [1]  4/1
office [1]  8/21
Official [1]  24/8
Okay [9]  7/2 7/23 8/3 12/3
12/10 15/8 17/9 18/1 21/13
old [1]  19/14
one [6]  3/12 5/19 9/18 19/8
19/13 19/15
ongoing [1]  12/6
only [1]  23/11

## opportunity [3]  17/12 18/7

21/16
opposing [1]  7/4
opposition [1]  8/8
option [1]  6/13
order [4]  3/4 5/14 16/25 23/2
other [7]  3/6 4/3 5/9 5/12 6/8
19/7 20/9
our [7]  8/11 15/5 15/6 15/6
15/7 16/9 19/3
out [5]  6/11 8/10 16/8 17/2
19/11
over [2]  15/20 16/18
own [2]  14/13 17/8

## P

p.m [3]  1/11 2/4 23/19
page [2]  10/2 11/5
page 5 [2]  10/2 11/5
paid [3]  16/21 17/2 20/24
papers [1]  9/19
paragraph [3]  11/5 20/17
20/25
Paragraph 15 [1]  11/5
Paragraph 5 [1]  20/17
paragraphs [1]  10/2
parol [1]  20/7
parse [1]  11/23
part [2]  11/23 17/23
particular [1]  9/20
parties [1]  16/19
pattern [2]  4/9 4/23
pause [2]  12/13 12/24
pay [6]  4/17 4/25 5/8 5/18
5/22 16/14
paying [4]  4/18 9/9 13/19 17/1
payment [2]  14/1 21/10
payments [3]  16/17 16/17
17/7
pending [1]  15/1
per [2]  19/20 21/11
per annum [1]  21/11
percent [1]  21/11
person [1]  18/25
personal [1]  8/2
phone [1]  12/19
pick [1]  8/21
PINCKNEY [1]  1/23
place [1]  17/8
plaintiff [7]  2/7 3/21 7/25 10/6
15/12 15/15 23/3
plaintiff's [4]  8/1 8/8 8/18 11/7
plaintiffs [10]  1/4 3/18 6/1
6/12 9/10 13/23 16/25 17/12
17/16 21/22
play [2]  4/15 20/10
please [1]  21/19
point [6]  5/2 5/8 6/12 15/1
19/18 21/8
policy [1]  3/9
possible [1]  20/1
potential [1]  8/5
potentially [2]  19/18 19/25
practical [2]  2/23 18/13
precluding [1]  23/3
prefer [1]  18/12
prejudice [4]  3/24 15/21 19/11
19/16
prejudiced [6]  3/18 3/21 5/15

## prejudices [6]  3/1 6/2

prepared [1]  3/3
presented [2]  8/22 17/16
presumably [1]  14/7
presumption [1]  9/15
pretense [1]  17/11
pretty [1]  18/18
prior [1]  20/23
probably [3]  4/2 7/16 18/17
problem [2]  2/21 2/22 10/10
proceed [1]  12/13
proceeding [1]  24/6
proceedings [2]  2/3 23/19
process [5]  3/4 6/16 14/12
19/3 23/9
proffered [2]  16/5 16/6
prong [2]  16/2 20/5
prongs [1]  15/9
propensity [1]  3/15
proposed [1]  23/2
proposing [1]  5/6
provided [3]  13/25 22/23 23/2
purported [1]  16/12
purpose [1]  8/14
purposeful [1]  19/6
put [4]  7/4 20/9 22/10 23/10
putting [1]  9/20

## Q

quantify [1]  6/3
question [4]  9/9 11/2 15/12
18/3
questions [1]  3/6
quick [2]  18/18 18/21
quote [1]  20/25
quoted [1]  16/18

## R

raise [2]  14/1 14/5
rate [1]  21/11
reading [1]  13/18
ready [3]  9/17 18/14 18/18
really [5]  5/12 5/21 5/21 9/16
15/1 17/15 18/23 22/5
reason [1]  22/20
reasonable [1]  20/18
reasons [1]  22/10
recall [1]  13/8
receive [1]  10/5
received [2]  11/6 11/25
receiving [1]  4/11
recognizes [1]  5/18
record [2]  19/8 22/16
referenced [1]  11/9
referring [3]  11/2 11/4 11/23
regarding [1]  21/8
relatively [1]  20/24
relocated [1]  19/22
remedy [2]  6/8 22/12
rent [3]  13/10 16/15 19/20
rents [1]  17/1
rephrase [1]  11/1
REPORTER [2]  24/2 24/8
required [1]  21/10
resides [1]  13/14
resolving [1]  19/16
respond [3]  7/6 9/21 18/8
responded [1]  12/12
response [1]  3/5
result [1]  21/2

**R**

reversal [1]  3/11
rewarded [1]  19/1
right [49]
rule [1]  20/7
ruling [1]  3/10
RYCHLICKI [6]   1/23 2/11
2/12 2/13 7/10 7/13

**S**

said [1]  8/23
salary [4]  14/1 16/14 16/22
17/2
same [1]  11/8
satisfy [2]  16/1 22/24
say [7]  4/25 5/2 8/18 10/15
18/21 19/10 22/9
says [8]  8/25 9/1 10/4 10/19
10/19 11/6 11/19 12/5 12/9
12/19 13/9 13/13 13/23 21/23
scarce [1]  19/7
second [5]  4/16 9/18 15/25
18/6 23/5
Secondly [1]  16/23
see [2]  9/11 18/13
seek [3]  6/8 6/11 6/13
seem [4]  6/12 19/5 20/18
21/12
seems [1]  21/9
seen [1]  2/15
sense [1]  17/15
sent [1]  4/10
seriously [2]  19/2 23/8
served [8]  4/9 8/18 8/23 9/24
11/12 14/10 14/17 19/22
server [1]  14/12
service [4]  3/5 5/10 14/19
21/23
set [11]  5/3 8/7 15/6 15/16
15/24 18/21 18/24 22/7 22/8
22/22 23/4
setting [1]  3/21
settlement [2]  12/14 12/15
several [1]  4/22
SHAW [1]  1/20
short [1]  19/24
should [1]  19/10
show [2]  9/14 17/10
side [2]  4/5 7/5
sign [1]  23/2
signing [1]  16/12
since [1]  13/9
sir [1]  12/11
sit [1]  12/1
small [2]  20/24 21/4
so [35]
solvency [1]  19/17
some [5]  8/12 8/18 9/6 13/18
22/10
somebody [1]  13/11
someone [3]  8/22 8/23 10/6
something [1]  14/4
Somewhat [2]  15/18 15/19
somewhere [1]  14/7
sorry [5]  6/15 7/23 8/1 11/1
14/18
sound [1]  11/2
sounds [1]  7/7
specific [2]  22/9 23/9

specifically [1]  20/21
spelled [1]  10/8
spent [2]  3/12 19/19
square [1]  3/12
state [1]  19/21
stated [1]  12/6
states [5]  1/1 1/16 12/11
13/17 13/20 15/11 23/9
status [2]  21/24 21/25
stenographic [1]  24/5
step [1]  6/16
still [1]  4/17
Street [1]  1/14
strong [1]  9/15
style [1]  20/22
suffered [1]  19/12
sufficient [1]  22/24
summons [2]  6/10 8/24
support [2]  8/25 23/10
sure [4]  7/7 12/19 13/3 22/15
Sweden [1]  11/6
Swedish [3]  10/5 11/2 11/13

**T**

take [1]  23/8
taking [1]  19/2
talks [2]  12/15 12/16
technical [1]  3/10
tell [4]  2/24 10/14 10/23 23/8
terminated [2]  4/18 14/2
termination [1]  11/2
terms [4]  8/13 12/17 14/24
17/11
than [3]  3/13 7/16 8/17
Thank [6]  7/8 7/9 21/15 21/20
23/12 23/15
that [121]
that's [17]  2/20 2/20 2/22 3/14
5/20 7/25 8/6 10/10 11/11
11/15 11/16 12/25 13/6 15/22
20/25 21/7 22/17
their [1]  7/5
them [4]  9/3 15/4 16/8 16/25
themselves [1]  13/25
then [15]  4/18 5/1 5/3 5/3 5/24
7/6 7/18 10/15 11/17 12/3
12/11 12/24 13/22 17/17 19/8
there [3]  3/15 4/8 4/15 4/23
6/2 8/5 8/9 12/15 12/21 16/23
17/5 17/15 19/2 19/15 20/8
23/4
there's [5]  3/23 9/15 10/9 15/1
15/3
these [8]  4/20 17/14 18/14
20/11 20/19 20/21 20/23
21/10
they [6]  6/2 8/11 10/15 12/13
13/23 13/25 16/13 21/12
they're [1]  15/15
they've [1]  6/6
thing [1]  19/13
things [3]  8/14 9/4 18/14
think [13]  3/23 4/7 4/24 7/3
9/6 9/23 10/13 11/7 11/12
12/24 22/5 22/20 23/7
third [6]  3/9 3/15 5/20 9/14
17/17 22/22
this [36]
those [1]  9/6 16/16
though [2]  2/17 19/9 19/24

thoughts [1]  8/12
thousands [2]  19/19 19/20
threat [1]  20/20
through [4]  6/8 11/17 12/4
20/1
throughout [1]  4/12
Thursday [5]  6/25 7/20 7/21
8/3 9/22
thus [1]  9/10
tied [1]  6/4
time [3]  16/20 19/24 19/25
timing [2]  19/9 19/10
today [2]  3/5 5/1 10/17 12/1
told [1]  16/13
too [1]  20/2
took [1]  19/1
top [1]  4/1
tourist [1]  8/16
tourist/business [1]  8/16
transcript [1]  24/5
trial [2]  18/14 18/21
true [4]  3/14 4/2 15/22 24/4
truly [1]  12/24
trying [2]  5/1 12/10
Tuesday [1]  1/11
two [8]  4/15 6/16 6/21 6/23
6/23 7/16 8/17 21/22
two days [1]  6/23
two weeks [3]  7/16 8/17 21/22
two-step [1]  6/16

**U**

U.S [2]  15/11 24/9
Uh [1]  13/1
Uh-huh [1]  13/1
unclear [1]  19/21
under [1]  15/10
understand [1]  13/16
understanding [2]  13/22 14/2
understood [1]  16/19
undisputed [1]  11/12 11/14
unemployed [1]  16/20
unidentified [1]  12/5
UNITED [6]  1/1 1/16 13/17
13/20 15/11 23/9
United States [3]  13/20 15/11
23/9
unknown [1]  19/17
unless [3]  3/5 18/2 20/8
unnamed [2]  10/20 12/12
until [5]  4/6 7/16 7/18 9/22
22/14
unusable [1]  6/5
unwillingness [1]  6/9
up [6]  5/8 6/4 8/21 13/9 18/5
19/4
upgraded [1]  21/3
URBAN [1]  1/23
us [6]  5/1 5/18 5/21 5/22 6/11
10/14
USA [2]  1/3 20/16
use [1]  18/25

**V**

very [8]  7/8 10/10 10/10 12/4
13/6 13/8 19/7 23/15
visa [3]  8/17 21/24 21/25
visiter [1]  8/16

**W**

wait [1]  7/18
walk [1]  19/5
want [7]  2/24 11/16 16/18
18/8 18/22 21/18 22/15
wanted [1]  13/24
wants [3]  5/20 9/16 22/9
was [61]
wasn't [2]  17/15 17/19
way [5]  5/4 5/15 6/8 16/21
18/13 19/8
waylaid [1]  8/20
ways [1]  21/12
we [23]  3/1 4/3 5/1 5/3 5/18
5/23 6/7 6/9 8/9 10/9 10/15
10/25 14/9 14/13 14/14 14/16
16/8 17/21 18/20 18/20 19/11
19/16 22/25
we'll [2]  3/12 13/9
we're [3]  7/6 11/2 23/16
We've [1]  6/16
week [1]  7/21
weeks [4]  7/16 8/17 19/22
21/22
WEIDINGER [1]  1/23
well [15]  2/24 3/8 4/4 5/2 5/17
5/25 6/15 7/18 7/24 8/19 11/4
13/12 14/25 16/8 18/20
went [2]  12/22 16/17
were [6]  6/10 12/15 13/21
17/11 18/23 20/21
what [32]
what's [2]  14/9 14/16
whatever [2]  18/22 21/18
when [12]  6/19 7/19 8/22
13/13 13/16 13/22 13/23
13/23 14/2 14/10 14/19 19/4
where [6]  3/23 5/1 5/18 5/23
15/16 22/1
whether [3]  8/24 15/12 15/25
which [6]  6/3 11/7 14/12
14/13 19/17 21/23
while [2]  4/16 12/13
who [8]  8/5 8/23 10/7 10/14
10/15 10/18 13/4 14/23
who's [2]  13/10 13/11
why [3]  5/22 8/13 9/7
why'd [1]  7/18
wife [2]  9/5 13/4
will [7]  3/12 3/18 5/4 7/15 15/9
15/12 22/19
willing [3]  4/25 5/2 5/23
Wilmington [1]  1/14
won't [3]  5/3 18/21 21/23
word [1]  18/25
words [2]  5/10 5/12
work [1]  6/7
worked [1]  8/5
would [19]  4/24 5/4 5/7 5/8
9/11 10/17 12/24 14/4 14/6
16/5 16/13 16/14 17/7 17/13
18/11 19/1 19/13 20/10 22/12

**X**

XHAIL [13]   1/3 1/3 10/6 10/20
10/24 11/1 11/20 11/25 12/5
13/19 14/15 20/16 20/16

**Y**

Yeah [3]  13/9 17/3 22/3

**Y**

year [2]  9/22 14/21
Yep [2]  7/23 7/23
yes [24]  2/8 2/14 2/16 2/22
 3/1 6/25 8/4 10/12 10/22
 10/22 11/10 12/11 13/7 14/22
 14/22 15/3 15/18 16/4 17/20
 17/24 18/19 20/6 22/18 23/12
yesterday [1]  9/1
yet [2]  18/10 19/16
you [63]
you'd [1]  3/6
you'll [1]  15/10
you're [5]  2/6 5/16 6/6 12/9
 23/7
you've [5]  5/11 5/15 5/17 8/23
 22/20
your [50]
Your Honor [3]  7/1 11/21
 18/16
yours [1]  8/2